Case number 22-2141, United States of America v. Brett Dauphinais. Arguments not to exceed 15 minutes per side. Mr. Chastin, you may proceed for the appellant. Good morning. Mark Chastin for the United States. I'd like to reserve three minutes for rebuttal. The court should reverse the district court's order suppressing evidence in this case. And that's because the district court erred in two significant major ways in this case. First, the district court erred when it reweighed the facts presented in Agent Hobbins' affidavit submitted to a federal magistrate judge, substituted its judgment about what constituted probable cause, and found that there was not probable cause to search the house in Ferndale. And second, when it found that Agent Hobbins could not rely on the magistrate's finding of probable cause in good faith. Agent Hobbins set out several important facts that established probable cause in this case and certainly met the standard for review which the district court was supposed to apply and which this court must apply on appeal. And that is whether there was a substantial basis for the magistrate's probable cause finding. First- Do you agree that everything that was observed was innocent? I mean, there was no criminal activity observed, right? Was there any overt criminal activity observed? There was no drug sale. There was no manufacture of oxycodone or counterfeit oxycodone. There was the purchase of a machine. They moved it. They bought some stuff that looks like you'd use it to produce counterfeit pills. But none of that is illegal, right? Individually, each one of those things is not illegal, but the constellation of those facts in combination with the agent's experience with the district court acknowledged the agent had the experience to draw that conclusion. So I understand, take like in Illinois v. Gates. There's a bunch of innocent stuff that is corroborated, right? Like none of it is criminal. But the tip itself from the anonymous informant was there's drug activity going on at this house and let me give you all the details of what they do. And the police go out and they corroborate all of the innocent details, but they still have the ultimate allegation that there was criminal activity, right? Here, I don't see any, there's no confidential informant, there's no anonymous tip that, hey, this guy is manufacturing counterfeit drugs or oxycodone, whatever it is. So I don't see, I mean, are there cases that support this idea that I can put a constellation of solely innocent conduct together and then with no allegation of criminal activity from anybody and that's enough, probable cause? I think the body of case law is very clear that the agents and the magistrate can draw reasonable inferences from facts that might otherwise have an innocent explanation. And the fact that there are possible innocent explanations does not, I think as the court said in, it's either Tagg or Christian does not, I think they're citing the Supreme Court, does not snuff out the opposite suspicious nature of the activity that the agents observed and that the magistrate relied on. Are you relying on the fact that they moved it? I mean, because it seems to me, based on what you're saying, that anybody who orders a pill machine is subject to search. That's not quite what we're saying. That's what the district court seemed to think was the basis of this case. In fact, one of the reasons that the district court erred when it said something very similar that moving one thing, something from one place to another is not probable cause. Well, there's a lot more than that here. First, we have, of course, all of this has to be in contact with the agent's experience with recent cases. As she pointed out in the affidavit within, I think, five months prior to this, a very similar case, same machine, same company, same sort of activity of moving it from one place to another, going to a residential address rather than a business, ended up finding an illegal pill operation. But then we take that this was ordered to a residence, that Mr. Delfinis appeared to have no actual connection with that address when they did surveillance and did online searching. They found that other people appeared to live there, that it did not appear to have any kind of business operation at all. They did a trash pull. They found nothing to indicate that he had any actual connection to that, despite listing that as his address on his driver's license and in the order form. The fact that he ordered... Did his mother own the house? I think they determined that. That was found out later. That's not in the affidavit. He says that in his brief, but I don't believe that's anywhere in the affidavit, that his mother owned the house. His mother owned the target location. That's in the affidavit. They did know that she owned the target location where the search ultimately happened in Ferndale. That's a matter of public record. Why couldn't the police find out that information? I don't know why they didn't, but ultimately even that really wouldn't matter because he didn't look like Mr. Dufinis had any connection or any operating business there. So when they're looking to see, okay, if in their prior experience they've had cases where people try to divert the attention, make it look like a pill went someplace or a pill machine went someplace, but actually went another, all of that would be consistent with that behavior. Look, over here. This is where the machine is, but actually we're going to move it over here. And that's what they were seeing here. But they were seeing it in broad daylight. And they were seeing it by people who were operating under their own name. It was not a fake name. He used his own name. He moved the item in broad daylight. That's correct. It was his mother's home. The fact that you had a case in which somebody else cheated, it's fair to consider, but that doesn't take away the burden and responsibility of the government to prove the individual case it's about to bring, right? They have probable cause here, not that they had probable cause somewhere else. Otherwise, innocent citizenry are just waiting to be in the wrong place at the wrong time. Well, of course, that's true in the general sense, but they did do that work here. They did look to see, okay, what is the actual connection that Mr. Dufinis has or his alleged business has to this location where he has had this machine. But he has an alleged business. I mean, it is an actual entity, right? He formed one. He filed under the state of Michigan, but their investigation showed no actual operation that they could determine this business was actually doing anything, either in the world or certainly at this location. They found no evidence of an actual functioning business. And let's go back to your question about having it delivered during the daytime. Well, of course, that's when FedEx delivers machines. They don't deliver machines at 2 o'clock in the morning. They're going to deliver it in the daylight. So that's why Mr. He didn't move it. He moved it immediately. 2 o'clock in the morning. He moved it then. He wanted to get it to the ultimate location fast, right? So when FedEx showed up, he was there to meet them. They, you know, unpackaged it because it was too heavy. What's your best analogous case? Because you cite Anderson, but that's an unpublished decision. What is your best published decision for this constellation of innocent behavior being sufficient to provide probable cause? I don't know that there's a case that's particularly on point, but I think the Christian case sets out a lot of the important facts that I think are the factors that the district court overlooked in this case, and that is that reasonable inferences can be drawn by the agents and the magistrate, that the court cannot substitute its own inferences or reweigh them. But probable cause is a factual matter. I understand you do have to have the constructs. That's fair. You have to have the questions that you have a right to ask, but then you have to tie them to facts on the ground. And you have no case with facts on the ground that would support probable cause in this case. Well, I think the Tagg case is analogous, although it's not exactly the same kind of case, where the government had evidence that Mr. Tagg was accessing this site, although it had no evidence that he actually was viewing child pornography. And as the court pointed out in Tagg, one, you don't have to show actual criminal activity, and that's very clear both in this court and the Supreme Court's case. But number two, you have to look at it in the context of the statute that's being investigated. And here under 843A6, it's illegal to possess one of these machines with the intent, knowledge, or reasonable belief that it's going to be used in pill production. And that's what the agents were seeing here. Just like the statute in... Give me again the intent, knowledge, and purpose of undertaking criminal activity. What did you have on that here? The fact that he moved it immediately to a different... Had it ordered to a residential address and immediately moved it to a different residential address. The fact that he ordered blue Firmopress binding agent, which would be consistent with making OxyContin pills rather than natural superfood. Or otherwise making pills that cohere and don't fall apart, right? Well, but there's a range of colors that you can order. So the decision was based on the color? That's one of the factors. The fact that he ordered a dye, which is a little confusing, but we're talking about a machine part, not a coloring agent. The dye that actually shapes the pill was consistent also with the shape and size of an OxyContin pill. And the fact that... And it would have been with other pills too, right? Again, yes, certainly there are innocent explanations. And that's another reason why I'd point to the Christian cases. It talks about you don't take each inference, knock it up, or set it up and knock it down individually. You have to look at these holistically. And as the court said in that case, the constellation of facts. And that constellation certainly provided a substantial basis for the magistrate's finding of probable cause. So what we have is probable cause is a standard that the magistrate applies. The district court and this court are supposed to look at whether there's a substantial basis for that. And then if we turn to good faith, it's a lower standard even for that. As this court has said, there has to be daylight between that substantial basis and good faith. And so the question is, did Agent Hobbins provide the magistrate on good faith enough facts for her to reasonably believe that Magistrate Judge Patty issued a valid search warrant and that she could rely on that search warrant? This is a far cry from the kind of bare bones cases or the case that Mr. Defenius cited in his 28-J letter where the agent didn't show their work and just sort of wanted the magistrate to make inferences but didn't give the facts to make those inferences. Here, Agent Hobbins did that. She showed her work. She gave the magistrate facts from which he could find probable cause and reasonably relied on... I would agree that it was not a paragraph like we see in others, but I found noticeably missing from it the nexus connection. Here are all these independent factors that I might consider, but I did not see much at all about the nexus to the Ferndale address. And isn't that the key, that you have to show that the things sought will be found at the address you want to search? That is the case, and that is much of the cases that Mr. Defenius cites on appeal go to that question. And here the nexus to the Ferndale address was very strong. The agents actually observed them transport the pill press from the railroad address to Ferndale, saw them back the car in there with the hatch open, later saw it in a different position with the hatch closed with apparently no room for the machine to be in there, saw Mr. Defenius and Mr. Byrne leave that address, go to another place, bring what could have been a heavy tabletop they couldn't see, and then Mr. Byrne leave. And, of course, they did have information in the affidavit that that home was owned by Mr. Defenius' mother, that that equinox was registered there. There was very strong evidence to believe that that Ferndale location was the final destination of the pill press and that they had reason to believe that they would find it inside. But no additional look. The trash pull was from somewhere else, right? The trash pull was at the railroad address. So this is without even those incremental pieces of evidence, no trash pull, no other indication that there was drug activity at the Ferndale address, right? No, but if the question is would they find the pill press or evidence at Ferndale, they did physical surveillance to show that that's where it went and that's where it appeared to end up. What evidence? The thing was just delivered, right? It was delivered to the Royal Oak address. Right, and then they moved it.  And how long after that was the warrant executed? I don't want to say four days. I'm not entirely sure about that, but it was within a matter of days. Okay. I mean, you were sort of assuming that he would have his operation up by that point. I mean, it's not in the record, of course, because that's what they found. But when they did go in, they did find the pill press there. They found a tray with pills being made and other drugs and guns. So that would be a reasonable. It turns out their inference that the tabletting machine, the pill press machine was there, was a solid one. Wait a minute. They found narcotic pills being manufactured? I don't think the pills were narcotic. I think they were like test sugar tablets. I'm not entirely sure. I think that the narcotics they found were in other forms. But they did see evidence that the pill press was actually being used to begin the process of making pills. That's what they're for. That's exactly what they're for. And it looked like, you know, the pill press was, given all the circumstances, they had a reason to believe that it was going to be used to make illegal pills. Why isn't this like the Weaver case? I'm sorry, which case? It's the Weaver case where the officer possessed some information from a reliable informant regarding possible criminal activities. But we held reliance was, even in a good faith context, unreasonable because the officer lacked prior personal knowledge of any unlawful activity by the suspect or the suspect addressed, true here. Other than, and in that case he even had an old conviction, and lacked present personal knowledge between the suspect and any drug crime at all. Had not personally seen anything at the address. So why shouldn't we hold what Weaver held, that the defiant just needed to do more independent investigative work to show a fair probability that the suspect was possessing, distributing, or creating drugs. I have to say, I'm not familiar with the Weaver case, Your Honor. It's published. Okay. But I think that the other cases that this court has issued, published cases, and the Supreme Court cases really do drive the decision here. And that is that the constellation of facts that the agent presented to the magistrate, when you draw reasonable inferences, which they did here, provided a substantial basis. It's certainly good faith. We've kept you over your time. Thank you. Ms. Minucco. Good morning, Your Honor. May it please the Court. Rosemary Gordon and Pam Minucco. That's how it's trying to be pronounced. You can call us pretty much anything you want. I'm here on behalf of Brent Dolphinus. I, like you yourselves, I have struggled with finding where's the problem that caused those criminal activity. And that's the one thing that I just plain don't see. The search warrant was lengthy. It has a lot of information. They did a lot of work at the 12th Street address and where I live. But that didn't show any criminal activity. And it basically comes down to, and I believe Judge Hood, in the oral argument, you know, asked them point blank. So it's about the machine. And, you know, one of the, she said, your argument is never intended to use the machine at the address you indicated on the form. And the U.S. Attorney said, yes, that's correct. So where is the illegal antithreats? And what's interesting is the search warrant starts off with the fact that it is, they're saying that it has, the information that they're going to show, problem causes is paragraph 8, for illegal manufacture and distribution of controlled substances. And the use of communication facility, possession of tabulating machine, chemical product or material, illegal possession of controlled substances, conspiracy to commit illegal drug distribution. That's what they're looking for. And if you look at Attachment B and look at the list of things that they're looking for, most of which are based off of the affidavit listing things that drug dealers do, that's what your problem cause has to be, that those things are going to be found in the Cambone address in Ferndale. And they're not. I mean, the affidavit simply doesn't show that. He buys the machine. He fills out all the paperwork. He uses a legitimate name. He uses the address that's on his driver's license. He has the business address, the DFF programs, I believe it is, which is the Michigan LLC. And he has it delivered. He signs for it with FedEx. He has to make an appointment because it's yet to sign for. I think we've all had that experience where they say, you've got to come and sign for it. So you have that right there. And then he moves it to the other house, with both houses. And it was my mistake. I misread that one paragraph that the mother owned the 12th Street house. Apparently she does. But that's actually, in the affidavit, it was actually the target location, which is Cambone Street in Ferndale. So that was my mistake in my brief, and I apologize for that in reading that. But ultimately, getting confused with what I know and what's actually in the affidavit, and I apologize for that. But ultimately, it's going from one place to the other. But what's odd about all this is there's no surveillance of the Ferndale address. There's the surveillance that they did, though they did exactly two days at the Royal Oak address. And the surveillance was from 9 a.m. to 2 p.m. Okay, so someone's at work. And so based on that, in one trash bowl, all of you has nothing to do with the Royal Oak address. Well, I find that kind of curious, given the times of the surveillance. If someone actually has a job and they're working, then, of course, they're not going to be there. You know, none of the two. And the fact that one trash bowl, I mean, I just don't think that weighs strongly in favor of the fact that he has absolutely nothing to do with that address, other than being related to the people that are there. In the affidavit, they suspect that Ms. Gilliland is the defendant's grandmother. So, you know, here we are with the situation. I couldn't agree with the court more that for all of the things that are here, there's no facts to support the agent's conclusions. She concludes there's probably no cause based on this. But I don't think that consternation of facts is there. That is not part of what it was in this particular case. And it's not even a minimal nexus to get you past the good faith. Try again, sometimes. Wait just a minute. We want to make sure that you can hear the judge's questions. Can I ask a question? Yeah, I didn't see it on the screen. I'm sorry, Judge. So my understanding or my reading of the case is that, you know, we don't ask whether the conduct or the things in the affidavit are innocent or guilty, right? We just look at the facts. And the question is the degree of suspicion that attaches to what may be wholly kind of innocent conduct. And why isn't it that at that point it's the DEA agent who has the experience who says, look, this is, in my experience, you manufacture these pills. You have to have this dye. You have to have this color. You have to have this machine. You typically don't, wouldn't send it to a residence. You know, it's not like it's a, you know, beyond a reasonable doubt standard or something like that. So I guess I'm not understanding why we couldn't or why the agent couldn't kind of put together this otherwise innocent stuff. But then adding her experience to it, then conclude there was probable cause. I think that if there had been any indication, I mean, the problem with doing that is there's absolutely nothing short of a perfectly legitimate purchase. There's nothing illegal about him moving it. There's nothing that says he's required to keep it at that place. He's done absolutely nothing illegal. Where's the criminal activity? There's not even a rift of that in this particular case. And I think that's where the inference that she's drawing comes back. Again, that might be probable cause in another case, but it's not probable cause here. So if she had experience, say she had 12 pill machine cases in the last six months. And in every single one of them, the machine was delivered to one place and moved to another. Does that have any weight? It's a consideration, but in this case, based on the totality of the circumstances in this particular affidavit, I would say no. I mean, it doesn't drive the whole thing. The entire search warrant is based on the fact that it makes a legal purchase and he moves it, which he's entitled to do without anything else in this case. That's the problem. There's nothing to indicate he has any connections in the drug business. He has the ability to set up a pill production. And what about if blue dye is just, you know, everybody knows that that's the dye that's used in certain type of pill? Well, blue dye is used in a whole bunch of pills, actually. And quite frankly, down here on the border, we're seeing the multicolored ones tremendously, amount of those. So back in 2001, blue might have been the color. Now they look like sweet tarts in terms of the multicolors. So I don't think that locking on to that one color necessarily equals illegal conduct, that there's criminal activity afoot, that you're going to find evidence of a criminal pill-making thing. And yes, it might be odd, but he's going to do his research and development with blue dye, but that's what he says in his DBA form that he's going to use it for. Any further questions? I don't think we have any further questions. If you would like to conclude. What would you say about the good faith exception? I mean, why isn't it close enough? Because there is no nexus between criminal activity and the phone bill address. And what I found kind of puzzling is why they didn't surveil Camborne to see if anything else got delivered, to see if there were chemicals, any of this other stuff. I think it was closer to five days. I was surprised how long later, after they got the warrant. I think they got the warrant on the 12th, didn't execute it until the 15th. And I could be wrong, but that's just what my memory of reviewing the record is. But the advance for the machine happens on the 10th. So you're looking at a situation where, you know, there could have been some sort of not-for-miss argument in the affidavit, or they could have amended the affidavit, but you don't identify any of the people that they got the thing for. They don't identify the Richfield, Detroit address as being anything narcotics. Remember, you've got no record on Mr. Byrne. They're saying it was in a conspiracy, and that's what they're claiming in the probable cause summary, that there's a conspiracy between my client and Mr. Byrne to manufacture illegal pills. I don't see where that – again, you're coming back to there's no nexus between the criminal activity that they're saying they're going to find evidence of at the Ferndale address and the Ferndale address. You know, I guess I don't understand the nexus argument, because if there's enough to say that there's probable cause that he's going to be manufacturing illegal pills, it seems to me that the only place there's a nexus to is the Ferndale address. That's where the machine was. If you're assuming there's probable cause in that warrant, that's correct. But I'm saying there's no probable cause in the warrant for any of the clients that are investigating put the statement in the paragraphs in the search warrant, and the items that they're looking for in Attachment B, that are going to be found at that Ferndale address, because there's no facts to support the inference that there's criminal activity that's matching what they're looking for in that search warrant, that they will be manufacturing and distributing pills. And I understand the statute also includes that and possess with intent to manufacture the illegality, but that's not what the search warrant says they're looking for. And that's in paragraph 8 of the search warrant. But that's the other thing, which you have to tie the things that you're looking for in that search warrant with the location. And in this particular case, there's no probable cause that the things that you're going to be looking for, other than the paddling machine, I mean, so that's going to be there, but that's not criminal, are going to be found at the Ferndale address. Any further questions? We have no more questions. Thank you. I thank you very much, and I really, really appreciate the ability to appear, given the way the airlines have been treating everyone. As much as I would love to see the colors in Cincinnati, it's been a long time since I've been there, but I appreciate the opportunity to give this on video. Thank you very, very much. Mr. Chastain? Thank you, Your Honor. I appreciate that Ms. Panucco has conceded that there is no question that there's a nexus to the Ferndale address, as far as that would be the place, as Judge White indicated, where they would find the pill press. So really, the only question raised legitimately by the defense motion, in this case in the appeal, is whether there was a substantial basis for the magistrate to conclude that there was probable cause of criminal activity, and then for Agent Hobbins to rely on that on good faith. I want to clarify, we've seen in the brief and somewhat here today, some argument about the scope of the search warrant, of the things that they were searching. That's not the motion they made below, and it's not the finding that the district court made that the scope of the search warrant, in terms of the things that they were looking for, was out of bounds. It was just straightforward. There was no probable cause here. So we're trying to divert. I don't want the court to get diverted into a motion that wasn't made and the findings that wasn't made by the district court. Judge Albandian, I think, was correct to point out that the standard here is not proof beyond a reasonable doubt, and that's really what we're seeing here, is an attempt by the defense, and unfortunately, I think Judge Hood went there too, to sort of ratchet up the standard. Probable cause, as this court has said, and as the Supreme Court has said, is not a demanding standard. It is not a high bar, and the gatekeeper of that is the magistrate judge in the first instance. That is the judge. He was the judge tasked with finding probable cause. The question for this court, and should have been the question for the district court, was is there a substantial basis for that probable cause determination? Not to re-weigh all the evidence and decide whether there was probable cause in the first instance. And then lower than that, of course, is whether Agent Hobbins gave enough to Magistrate Judge Patty so that she could conclude that his finding of probable cause was valid, based on her training and experience and all of the facts that she gave Magistrate Judge Patty. The affidavit met all three standards in this case, but certainly a substantial basis and a good faith. I'd like to point out that Ms. Panucco talks about the color, tries to dismiss the color in this case. Of course, Mr. Dufinis said that he was producing or going to be producing natural-type organic foods, and Agent Hobbins pointed out that that color is inconsistent. Ms. Panucco's response is that, well, on the border you're finding things that look like candy, sweet tarts. Those are drugs, I'm assuming. I mean, she's talking about people importing into the country not natural organic foods. And so it just further sort of points out that drug dealers don't use natural colors, organic colors. They're using things that look like drugs or candy. And so that further buttresses Agent Hobbins' observation and reasonable imprints that that was another data point in the constellation that Mr. Dufinis intended to use this machine to produce illegal drugs. We ask that you reverse the order of the district court suppressing evidence in this case. Thank you. Thank you. Unless your court has any questions, I'm sorry, I don't want to run away if you have additional questions. No, thank you. We appreciate your briefing and your argument, and the case will be taken under advisement and an opinion rendered in due course.